Amador-Huggins Mr. Feldman? May I have two minutes for a bottle of your honor? Yes. May it please the court, Steve Feldman for Alexis Amador-Huggins. I'd like to highlight Mr. Feldman I'm sorry Why don't you wait until the courtroom gets cleared out   Mr. Feldman I'd like to highlight Mr. Feldman I'd like to highlight Mr. Feldman I'd like to highlight     I'd like to highlight Mr. Feldman I'd like to highlight three errors that are more being explained in the brief. The first is that the district court The first is that the district court refused to allow the defendant to call an expert. And what is stunning about the district court's ruling is that the government requested on three separate occasions that the district court please allow  and if you look at the language that the assistant for the government used, it is very, very telling and very commendable. The first thing he said to the judge was the defendant is entitled to present his defense and when the district court refused and this is after all of the objections by defense counsel the government implored the judge and even said again he has the right to develop his defense. Again, this is the government making this argument. Mr. Feldman, if this witness had testified, what's the upshot that the jury could have taken? At what point would the jury walk away? Judge Cata, the upshot was quite clear. The co-defendant alleged a certain set of facts that the defendant was driving a vehicle and was crashing into the vehicle in front of them The expert could have testified that that version of the events could not have occurred because there would have been major damage to the bumper of the vehicle but there was no damage to the bumper. So are you suggesting Morales, by the way, testified that the cars were going 10 to 15 miles an hour and I think he said tapped the vehicle and that your client indicated he didn't want to do any damage to the car because it was his mother's or grandmother's car? If that's the testimony, how would testimony that at certain speeds there would have been a dent in the bumper, how would that have helped you unless there was some serious issue as to whether or not it was his car at all? Again, the expert would have disproved the only witness in this case who links the defendant to this crime Don't you also have the testimony about the car and the license plate on the car? But that only goes so far. That only places the defendant inside the vehicle. The co-defendant initially denied a shooting the victim. He then admitted shooting the victim. Now the government needs his testimony because they have no evidence between who murdered the victim. The only evidence they have is the co-defendant saying he gave me the gun, he told me to go out and shoot the victim. And the expert could have absolutely demolished his version of just the attempted carjacking itself. Would you point to the expert as saying that that car with that license plate wasn't even there? Or are you simply saying your expert would have proved that the speed of the tapping was lower than Morales claimed it? No, it wasn't a question of lower. It's just that if Morales was telling the truth, his version of events could not be accepted because his claim of striking the vehicle in front of him at 10 to 15 miles an hour could never have occurred. There would have been major damage to the bumper. The expert could have testified to that. And like the government said, that he has the right to present a defense and that was a critical part of his defense. You just conceded that the license plate identifies the car. The mother of your client said that she loaned that car to him and you concede that it puts him in the car. But I'm not conceding he committed a crime in the car. It was only the co-defendant and his testimony that links the defendant to the crime. Your theory is that your client was simply in the back seat? No. That he was at the wheel but he had no idea about the mens rea of the co-defendant. He did not know he was going to get out with a pistol and shoot the victim. There is no evidence in this record of any kind that the defendant had any knowledge of this crime at all outside of tapping a vehicle in front of him. Everything that you've just said about the possible relevance of expert testimony for the defense would have been entirely knowable before the trial started because what you're saying is your expert would have conflicted with the story that Morales told and you knew Morales' story was going to be before the trial started. That's only partly correct. The problem here is that the defense had no idea that the government was going to use an FBI agent as an expert witness even though the agent admitted he was not an expert and knew nothing about bumpers. If he had not testified at all, everything you just told us about why the expert was needed would still be true. In other words, you want an expert to demolish a part of Morales' testimony. Well, the expert was necessary to respond to the FBI agent's testimony about bumper damage in general based on his experience. Is that the only purpose that we should be considering whether you were entitled to put an expert forward to rebut that FBI testimony as opposed to the theory that you were propounding before that it was necessary in order for you to make your defense? Well, both. It applies to both. If it applies to both, then I think you need to answer Judge Gatta's question. How come you didn't make an effort to put on the expert before the FBI agent testified? As I explained, Your Honor, Judge Barron, the defense did not know that there was going to be improper expert testimony, and it was only in response to the objections to the FBI agent's testimony that the defense immediately said So it's only at that point that it became necessary to your defense? Yes. Okay, so then in what respect was it really necessary to have an expert respond to the sort of lay opinion of the experiential recountings of the FBI agent? Because you'd be able to say, I assume on cross, to the FBI, you can't say for sure that there couldn't have been a dent, right? Well, the expert could have testified that there 100% would have been major dents and multiple dents, and it would have discredited not just the co-defendants. Would that have been necessary in order to cast into doubt the FBI agent's testimony? Yes. Because all the defense attorney had was his cross examination to say to the agent, you're not an expert in the field, and your entire testimony is based on your experience, which is irrelevant to the facts of this case. But I guess the thing that's just a bit of a puzzle in my head is, the reason it seems to me you must not have thought an expert at the outset is because you thought it was a common-sensical judgment as to, well, then why didn't you ask for an expert at the beginning? You must have been trusting the jury to make a judgment on its own. No. It has to do with the way this trial developed, and the FBI agent had not testified, from everything you've said here, you were not planning on putting on an expert. Well, Your Honor, I didn't try the case. I can't speak for a counsel. There was nothing in the record indicating that there was going to be an expert put on other than to rebut the FBI agent. Is that right? Right. Okay. So that certainly suggests that the theory of the case was that it was, as the district court thought, a common-sensical judgment as to whether at these speeds there would be a bump or not. But the reason it can't be a common-sensical judgment is, first of all, this whole issue requires expert testimony. There are experts in Detroit who study bumper damage. It's way beyond common knowledge by a jury. And what triggered this entire situation is the government was using an FBI agent to testify based on experience as opposed to being an expert on bumper damage. The second point was the drug purchases, which were totally irrelevant in this case, and in essence was propensity evidence against the defendant. Propensity for what? Well, the Ninth Circuit, Your Honor, has ruled in cases on personal drug usage that when a jury finds out that a defendant has engaged in drug purchases or uses drugs, they draw an adverse inference against him. This wasn't just prior random drug usage. This was a description of the culmination of this murder. This is actually what the co-defendant testified happened at the end. But there was no reason to discuss the drug purchases of the co-defendant who was also saying the defendant also purchased Percocet and marijuana. There was no reason for that because first of all, like Your Honor says, Judge Thompson, this was completely unrelated to the facts of the alleged crime. These facts occurred after and there was no reason to introduce those into evidence because... But the purpose of this crime as I understand it, the alleged purpose of the crime was a carjacking. And they were unsuccessful in getting the car, obviously. But this is reporting back to the person who was the intended recipient of the car what had happened. And this was part of the follow-up with the person who was going to get the car. Judge Thompson, you're 100% right that they went back to the individual who gave a gun. But the issue of buying Percocet has absolutely nothing to do with anything before, during, or after the crime. It was just thrown in by the government to prejudice the defendant. And the fact is, the United States even admitted that they would not ask the co-defendant about the drug purchases. Let me ask you about the prejudice because you've lost me on that. It's the same witness who testifies, right? So Morales, as I see the record, Morales testifies that the defendant committed this, what you might call in the grand scheme of things, little tiny crime of getting the Percocet and then this shock-to-conscious crime of a carjacking that results in the death of this young man. And what you're saying is that if the jury believed Morales on the Percocet, then that would prejudice your client. But if it believed Morales on the Percocet, how does that add to the government's case against you? Because it's the same witness who's saying he did this huge thing over here. Because there was no evidence linking the defendant to the murder other than the same witness who's trying to sully the reputation of the defendant by saying, by the way, we also after the crime bought drugs and it ends up, and the Ninth Circuit has addressed this issue about the negative impact it has on a defendant when irrelevant personal drug usage is admitted. There is no connection between a carjacking and purchasing drugs after the fact. The final point I would just like to I'm sorry. I'm sorry, Your Honor. Thank you. Were you going to talk about the star witness issue? The hearsay issue, Your Honor? I'm sorry? What was the issue you wanted to raise? I wanted to just quickly address the issue of the hearsay that was admitted, the alleged admission by my client which should not have been admitted. Yes, that's what I was asking about. Correct. May I have two quick minutes, Your Honor? I apologize. No, I do want to hear about this issue. Okay. Thank you, Judge. The co-defendant said that the defendant said to him, I hope the government doesn't have a star witness. No federal or state case has ever said that a declaration against penal interest or self-incriminating. What defense counsel argued in the district court is true. Every single defendant in every criminal trial says the same thing. And any attorney who is handed... Given that, in a brief answer, how then is it prejudicial given the ambiguity in that statement? Because the jury could infer that that was an admission by the defendant and basically they could say, even though there's such limited evidence against them and the entire case is based on the word of the co-defendant, the jury could say, well, here's just one more piece of evidence that never should have been admitted at this trial. Can I just have one final point about the restitution, which is a very minor issue. This court said on July 6th that there need not be an explication in detail of restitution, but here the record is completely silent and all the judge did was cut the request in half but didn't explain how he arrived at his restitutionary figure. Thank you very much, Your Honors. Good morning, Your Honors. May it please the Court, Susan Jorgensen on behalf of the United States. Your Honors, I'd like to keep one minute for rebuttal, if I may. Your Honors, I'll jump right into the issues. The first issue, the brief mention of we when Morales was testifying as to the illegal drugs. As an initial matter, I'd like to point out that the prosecutor did not pursue a line of questioning designed to elicit testimony about Morales' drug, about Amador Huggins' drug use. She agreed that she would not pursue that line of questioning in the face of repeated objections by defense counsel. In fact, she asked Morales what happened when they returned to the housing project in Catano and he responded that we bought pills. She attempted to correct him and said, you bought pills? And he said, yes, I bought pills. She then asked, what happened next? The answer was unresponsive. Instead of responding to the question immediately, he backtracked and he said, we bought pills. I had my perco and my marijuana and we bought some beer. So, she attempted to comply with her promise not to question him. She didn't question him. He backtracked and didn't respond to the question. This court addressed a similar issue in United States v. DeSimone, 699 F3D 113 in 2012. One of the government's witnesses failed to testify as the government had proffered in its opposition to a motion in Lemonet. The First Circuit, applying a manifest abuse of discretion standard, upheld the district court's ruling and noted that the difference in the testimony did not go to an element of the crime. Here, similarly, there was no testimony that went to the element of the crime. It was a discussion about marijuana and Percocet use and it was very limited. There were only two references, two uses of the word we. In addition, I would point out that the cases cited from the Ninth Circuit are 20 to 30 years old and even assuming arguendo that the comment was improper, the comment was very brief and any prejudicial effect was very limited. It wasn't as if they were talking about methamphetamines or cocaine use, crack cocaine, or something of that nature. These days I think marijuana and Percocet use is arguably of limited prejudice and again it was only mentioned twice. Further, the government would submit that the evidence actually was admissible under 404b as intrinsic evidence because it was inextricably intertwined with the events that occurred and would assist the jury in understanding those events. In addition, even if it wasn't intrinsic evidence, it was extrinsic evidence which was admissible because the first test is whether or not the evidence is relevant to anything other than defendant's character and in this case it was. It was relevant to whether or not he knew the individuals that were hiring for the carjacking. The second test is whether or not its probative value outweighs its prejudicial effect. In this case again I would argue that it does because again I would argue there was a limited prejudicial effect, if any. Again, in United States v. Habibi, the first court held that any evidence that might be useful to prove motive, opportunity, intent, preparation, or a lack of accident or mistake is admissible. Your Honors, moving on to the second issue, an expert witness on bumper damage. Your Honors, the defense pursued a strategy from the very beginning of trying to create doubt by saying that the bumper should have been damaged more than it was in both cars. He opened with that argument. He questioned Officer Pabon about whether or not the victim's mother had made a slapping motion when she used the Spanish word for bump. He cross-examined witnesses about that repeatedly. So I think it's only to be expected that the government would attempt to rebut this theory and point out why it was flawed. The expert that the government presented was not an expert witness. He was a layperson witness. He was testifying based on his experience as a law enforcement officer. In addition, I would also point out that defense counsel very thoroughly cross-examined Agent Marchand. He pointed out Agent Marchand's lack of knowledge as National Highway Administration and manufacturer data. He pointed out that he had not researched the issue, that he was not personally familiar with the traffic patterns at that location at that time of day, and that he had not personally investigated the scene. So I think defense counsel very thoroughly did an excellent job in cross-examining this witness, and the jury was capable of extrapolating from that what they would. I'm not sure how his law enforcement background enables him to testify about auto mechanics. Well, it wasn't auto mechanics, Your Honor. It was simply his experience of the kind of damage he's seen on bumpers in carjackings that he's investigated. And he was testifying as to what he normally saw. And defense counsel even asked him about how many cases he had investigated. I don't know if there's a normal carjacking. That is true, Your Honor. I agree. Often they do follow a pattern, however, particularly in Puerto Rico. And he was able to testify as to that. What normally happens is that the individuals attempting to carjack the car will bump the car lightly in an attempt to get the individual to pull over, thinking that there's been an accident, and then they will use their weapons to force the person to drive to another location where they then shoot them and take the car, or else force them out of the car and take the car. But whether damage ensues or not is a different issue. That's correct. And he had seen damage. He had investigated several. I think he said around 10 carjacking attempts that were successful, perhaps. And he had seen the photos. So he was simply testifying as to what his experience was in terms of the damage to bumpers. In addition, I would say that it's the issue of whether or not a car will sustain damage to the bumper when it's traveling 10 to 15 miles per hour in the same direction as the target car is probably an issue that's within a common juror's understanding. I think most of us have had incidents where at one point in our driving career we've backed into a guard railing that we couldn't see, or a tree as we were parking or exiting a parking lot, or I think this is something that the common juror could probably understand. And again, the government put on a question to Agent Marchand about this simply because they had to rebut in some way the theory that was repeatedly emphasized by defense counsel. Can I just ask you about the statements below from the government? Is the counsel imploring the district court to allow them to put forward an expert? No, Your Honor, thank you for that question. Indeed, I do not believe that, I think reading of the record in context will show that that is not the case. In the face of repeated and belligerent objections by defense counsel, he mentioned a very vigorous defense to his credit. But in the face of those repeated objections, I believe what's more accurate is that finally the prosecutor was exasperated and she said, Your Honor, she left it in the hands of the judge. Your Honor, whatever you choose to do, whatever you think is proper under the law, we would only ask that if you do allow an expert witness that you do not delay court too much because they had the jury already impaneled and the case was in progress. And even that, the defense counsel objected to. She did object initially, but the objections were just by defense counsel. Does the record show how much of a delay would have resulted? No, but defense counsel did not attempt at any point before trial to locate an expert or introduce an expert. So I don't know how long something like that takes, but you have to prepare the witness and it likely would have taken some time, I would think. My recollection is that this testimony came out at the end of the week. So my thinking was that they were going to take the weekend to get the expert. I don't know if that would have been sufficient time, Your Honor. I honestly do not remember whether it was close to the weekend, but I also don't know if you would be able to locate an expert over a weekend and get them to Puerto Rico and prep them for trial. Did the district court rely on the timing or the delay in denying the request for the expert? There is no  He denied it on the grounds that there was a necessity to have an expert on this type of issue. I believe that is the case, Your Honor, but I can check back on the record and supplement if you'd like. Moving on to the third issue. I don't know if the panel is interested in this Never Lost a Case. Appeals counsel, defense counsel didn't raise it. Yes. The Never Lost a Case issue by Agent Gonzalez. There again, you have to read the record in context as a whole. Government submits that the statement by FBI agent Gonzalez that she never lost a case did not warrant a mistrial. First of all, the defense counsel seized on that comment and used it in attempting to further his arguments. Second of all, he immediately improperly retorted, well, there's always a first time, which arguably would cure any potential harm. Third, defense counsel raised no contemporaneous objection. Fourth, ultimately, defense counsel agreed with the court that the judge's suggestion that the instruction be given during the final jury instructions the next day, and he, in fact, drafted those instructions. As the prosecutor pointed out, if the instruction had been given at that  it would have made the issue more prominent in the jurors' minds. This way, giving it with the final jury instructions, it minimized any potential damage, if indeed there was any. Sixth, there's no reason to believe that the jury did not follow the court's instructions. The presumption is that the jury did indeed follow the court's instructions. Seventh, the plain error standard cannot be met because there was no harm to amateur Huggins' substantial rights. The case against him was overwhelming. And speaking to that issue, Your Honor, we have quite a case against amateur Huggins. First of all, not only witness Morales, who is an eyewitness to the case and was a co-defendant, we also have Mrs. Crespo who was following the two vehicles and saw the car pull ahead and force the other car off the road and saw the shooting occur. We also have the testimony of Rodriguez who saw the two return in the white Jeep. And it's not true that we have no other eyewitness. We have the victim who read the license plate number to his mother over the phone. She repeated it again and again and again to the girls in the car and they wrote it down. The car was registered to amateur Huggins. So we in fact have two eyewitnesses. Unfortunately, one of them has passed and we couldn't call him to the stand. Again, Your Honor, the case was overwhelming. Moving on to the issue of questioning Rodriguez about uncharged criminal conduct. Rodriguez was the witness who saw the two return to the housing project in the white Jeep. Your Honor, the government submits that the District Court did not abuse its discretion in not allowing questions about Rodriguez's prior drug use. First of all, the issue is not relevant to credibility. The First Circuit has specifically held that allegations of dubious and unproven reliability regarding drug dealing activities of a witness are inadmissible to attack credibility where they are not probative of credibility or truthfulness. And this is United States v. Fortes and Gonzalez-Sanchez. Further, there was no assertion at any point that amateur Huggins did deal in drugs with witness Rodriguez. This is an attenuated speculation by appeals counsel. The theory is that maybe he had some kind of bias and therefore he was motivated to testify untruthfully. However, if this was indeed the strategy that defense counsel was attempting to pursue, it would have directly contradicted his earlier expressed strategy of not introducing any evidence of his client's drug use. And he explicitly said during sidebar with the judge that he did not wish to intend to pursue that line of defense. So that would have destroyed that strategic decision. Last, Your Honors, on the issue of restitution. Here the defendant raised no objection to the restitution suggested in the PSR, nor did he raise an objection during sentencing. Where he's not raised an objection below, the standard of review is plain error. I think it's difficult for the court to get to the plain error standard in this case because there's no harm to his substantial rights. So I think it's hard to get to that standard. The government takes the position that this should be affirmed because we believe it would be in the family's best interest to put this matter to rest. However, should the court decide that there's a legal issue where it needs to be looked at again, we would point out that funeral expenses are reimbursable under the Restitution Act. It's very language states that they are reimbursable. It says, in the case of an offense resulting in bodily injury that also results in the death of a victim, the perpetrator shall pay an amount equal to the cost of necessary funeral and related services. Now I found a couple cases related to this and there's one case in the Eighth Circuit in United States v. Iron Cloud in which the Eighth Circuit affirmed funeral expenses and also found that a Native American Indian giveaway ceremony was reimbursable expenses and that would cost $3,000.  found headstones and funeral services are reimbursable. That's a related funeral expense, Your Honor. In this case, the victim had dual nationality. He was raised in the Netherlands and his mother was of Puerto Rican nationality, a United States citizen born in Puerto Rico and raised in Puerto Rico. His father was a Netherlands citizenship. The defendant takes the victim as he finds him, as in tort law, and in this case it's only to be expected that there would have been a funeral in both locations and the body would be flown back to the Netherlands. Thank you, Your Honors. Your Honors, I just want to address one point very quickly. The government essentially intimates to this court that the United States attorney was almost bullied into saying the things she did about the expert, but what she actually said was that the defendant is entitled to present his defense by calling an expert, and she repeated that two separate times, so she wasn't just agreeing with defense counsel or giving in to defense counsel's demands, but she was actually characterizing this issue as a Sixth Amendment right to present the defense, which cuts to the very heart of this trial. Thank you very much, Your Honors.